KATHLEEN THOMAS, Plaintiff and Counterdefendant-Appellee, *v.* CONSOLIDATED SCHOOL DISTRICT NO. 429 *et al.*, Defendants and Counterplaintiffs-Appellants.

(No. 11633;

Fourth District—August 15, 1972.

46

Dunn, Brady, Goebel, Ulbrich, Hayes & Morel, of Bloomington, (William M. Goebel, of counsel,) for appellants.

Fellheimer & Fellheimer and Sidney E. Smith, both of Pontiac, (Charles E. Glennon, of counsel,) for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This case arises from a collision between an automobile being driven by the Plaintiff-Appellee Kathleen Thomas, and a school bus, owned by Defendant-Appellant Consolidated School District No. 429, being driven by its employee, Defendant-Appellant Sara Roberts.

Count II of the amended complaint charged that the defendants were guilty of willful and wanton misconduct in failing to keep a proper lookout, particularly in view of limited visibility due to weather conditions; failed to yield right-of-way; entered the intersection at a speed greater than was reasonable and proper; and failed to give audible warning with the horn on the school bus.

The defendant Sara Roberts filed a counterclaim against the plaintiff Kathleen Thomas, alleging that Thomas negligently operated her automobile at a speed which was greater than was reasonable and proper; failed to reduce speed to avoid a collision; failed to keep a proper lookout; to yield right-of-way; and failed to have proper control of her automobile so as to avoid a collision and prayed for damages for personal injuries suffered in the accident.

Defendant School District also filed a counterclaim for damages to the school bus and alleged the same acts of negligence as contained in the counterclaim of Sara Roberts.

Count III of the counterclaim stated a cause of action by Sara Roberts against the plaintiff alleging the same contentions set forth in the negligence count but characterizing the conduct as willful and wanton; and Count IV of the counterclaim by the School District against the plaintiff was also bottomed on allegations of willful and wanton misconduct.

As to count I of plaintiff's amended complaint which sounded in negligence, defendants' motion for summary judgment was sustained under the provisions of the Tort Immunity Act (Ill. Rev. Stat., ch. 85, sec. 1—101, *et seq.*), and there is no appeal from that judgment order.

The case was tried before a jury on Count II of plaintiff's amended

complaint, upon the four counts of the defendants' counterclaims, and the respective answers to the complaints. At the close of all the evidence, the trial judge directed verdicts in favor of the plaintiff Kathleen Thomas on all four counts of the defendants' counterclaims. With respect to Count II of the plaintiff's amended complaint, at the close of all the evidence, he found as a matter of law that the plaintiff Kathleen Thomas was not guilty of contributory willful and wanton misconduct, and the sole remaining issue in the case, to-wit, whether or not the defendants were guilty of willful and wanton misconduct was submitted to the jury. The jury returned a verdict in favor of the plaintiff Kathleen Thomas and assessed damages in the sum of $61,000.00 and judgment was entered on the verdict. The jury was also given a special interrogatory which asked whether or not it found Sara Roberts to be guilty of willful and wanton conduct which proximately caused Kathleen Thomas's injuries and responded in the affirmative to that inquiry.

The defendants urge that the Court erred in directing verdicts on their counterclaims and in failing to submit to the jury the issue of plaintiff's contributory willful and wanton misconduct and also argue that the Court committed error in the giving of certain instructions.

Briefly summarized, the evidence discloses that the intersection in question was surrounded by heavy fog at the time of the accident. With one exception, the witnesses testified that visibility was approximately 150 feet. The exception being the witness Blahitka who testified that he could see the school bus and plaintiff's car at the intersection from a distance of 600 feet. He was following plaintiff's car and saw the collision occur.

■■ The plaintiff was proceeding south in the driving lane of Route 66, with her was a passenger, Karen Bannon Phillips. The defendant Roberts approached the intersection from the west, proceeding in an easterly direction on McDowell Road. She brought the bus to a stop at the stopsign which controlled traffic on McDowell Road at its intersection with Route 66. She intended to cross Route 66 and proceed east on McDowell Road. The stopsign was 27 feet from the edge of the pavement. She called two of the older students to come to the front of the bus and assist her in watching for traffic. Several cars passed, she then proceeded to start across the southbound lanes of Route 66. As she got on the pavement she was looking to the south, watching for traffic in the northbound lanes as she also intended to cross those lanes. She could have inserted the bus at an angle into the median separating the north and south bound lanes without obstructing traffic in any of the lanes. One of the students, as the front of the bus was at about the center line separating the southbound lanes, said "There comes one". The defen-

dant looked north, saw two sets of headlights. They seemed like they were quite a distance up the road. The impact occurred just seconds after she saw the headlights. After she saw the headlights she again looked to the south to watch for northbound traffic. The plaintiff's car struck the bus in the area of the driver's seat. The collision occurred in the inner or passing lane just to the left of the center line dividing the two southbound lanes of traffic. The defendant testified that she was aware of the possibility of traffic which she could not see because of the fog. There was dispute as to whether or not the bus lights were on. There was testimony to the effect that an alternate route was available to the defendant in that she could have returned to Pontiac, crossed U.S. 66 at an intersection where all traffic was controlled by stop and go lights and driven south on roads on the east side of Route 66 and picked up the student in question. There was some dispute over the difficulty or feasibility of turning the bus around since McDowell Road is narrow. Defendant testified that the way she was proceeding was her regular route and she elected to follow that. Whether or not defendant's conduct in slowly pulling out onto the preferential highway with a school bus long enough to block both southbound lanes of traffic when visibility was limited as it was, posed questions of fact for the jury. They found defendant's conduct to be willful and wanton, and we cannot say that the verdict is against the manifest weight of the evidence, and we will not, therefore, set aside the verdict of the jury.

■■ The defendants contend that the Court erred in directing verdicts for the plaintiff on defendants' counterclaims and asks that the directed verdicts be set aside and the cause remanded for retrial on the counterclaims. We will not consider the propriety of those orders. All of the evidence relating to the counterclaims was presented. The parties are identical. The principle of *res judicata* "* * * simply means that where a question has been directly in issue and decided by a Court of competent jurisdiction, the issue cannot again be litigated in a future action between the same parties * * *". (*Gillies v. Little Vermilion Drainage Dist.*, 401 Ill. 344, 349, 81 N.E.2d 916; *Cohen v. Schlossberg*, 17 Ill.App.2d 320, 323, 150 N.E.2d 218.) The verdict of the jury here, established that the defendant Roberts was guilty of willful and wanton misconduct at the time of the accident in question and this effectively bars recovery by the defendants on their counterclaims.

■■ The defendants complain of the giving of plaintiff's instruction No. 29 which was in the language of the statute and objects particularly to that portion of the language which says that "* * * every driver of a vehicle approaching a stop intersection indicated by a stopsign shall stop as required and after having stopped shall yield the right-of-way

to any vehicle which is approaching so closely as to constitute an immediate hazard * * *". They argue that this paragraph "assumes that there is evidence in the record to permit the jury to speculate * * * that Sara Roberts did not stop at the intersection" and that it placed a duty on the defendants to insure the safety of the plaintiff. The instruction does not place that duty upon the defendants nor does it imply that the bus driver did not stop at the stopsign. Her testimony was that she did stop and it was uncontradicted. The instruction embodied the language of the statute and is not susceptible to the interpretation placed upon it by defendants. They make the same argument with reference to an instruction which they identify as plaintiff's instruction No. 25. We have examined the record and find no instruction No. 25. There are two plaintiff's instructions marked 25 and these were apparently changed to read 26A and 27A and we do not know to which instruction defendants refer, but we find no error in the giving of either instruction 26A or 27A.

■■ Defendants also complain that plaintiff's instruction No. 38 which is in the language of the statute and which provided "every motor vehicle operated upon a highway shall be equipped with a horn in good working order * * *. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn." They argue that the instruction assumes that the bus was *not* equipped with a horn. This contention is without merit as is the contention that the failure to blow the horn could not be a proximate cause of the plaintiff's damages. Under the factual circumstances here present it was not error to give the instruction.

■■ Turning now to the defendants' contentions with respect to directing the verdict on the issue of the plaintiff's freedom from contributory willful and wanton misconduct, we hold that the trial judge committed reversible error in directing the verdict on that issue. Visibility as plaintiff approached the intersection was 150 feet. She testified that she was having a conversation with her passenger, Mrs. Karen Bannon Phillips, and that the radio was on in the car. She testified that she was looking straight ahead and that her speed was 30 miles per hour. She said that her first vision of the school bus and the collision were almost instantaneous. That "when I first saw the bus it was approximately 8 feet from where I was, from my eyes, and that would be, I suppose maybe 4 feet from the front of the car." The witness Blahitka who was some distance behind plaintiff and following in the same traffic lane was able to see, and identify, the defendants' vehicle as a school bus, saw it pull out "awfully slowly" onto Route 66 into the path of plaintiff's car, and he testified that he was 600 feet from the intersection at the time. That he observed the brake lights of plaintiff's car on, that plaintiff's car was "almost at

the intersection" and he then saw the collision occur. This evidence, and particularly that of the plaintiff herself, raised questions of fact which should have been submitted to the trier of fact. Her failure to observe the school bus until the front of her car was only 4 feet away raises a substantial question as to whether or not she was keeping a proper lookout, and while Blahitka's testimony extends the range of visibility beyond that testified to by other witnesses the jury could have believed him. But assuming the range of visibility to be the 150 feet testified to by other witnesses the fact that, by plaintiff's own admission, she drove all but 4 feet of that distance without seeing the bus raised an issue for the trier of fact to resolve.

■■ The standard of care to be exercised by a driver proceeding along a preferential highway has been the subject of numerous opinions (*Cf. Conner v. McGrew,* 32 Ill.App.2d 214, 217, 177 N.E.2d 417; *Pennington v. McLean,* 16 Ill.2d 577, 158 N.E.2d 624), and these cases establish the principle that the statute requiring a driver to stop at the entrance to the preferential highway and to yield the right-of-way to vehicles proceeding thereon neither imposes absolute liability upon the party driving upon the nonpreferential highway nor an absolute right-of-way, regardless of circumstances upon the party proceeding upon the preferential highway.

■■ "The Illinois decisions, however, do not provide a precise formula for determining whether a particular vehicle has conformed to set standards; that question must be determined by the jury." (*Pennington, supra.*) Whether or not the conduct of the driver of the car proceeding on the preferential highway is such as would preclude recovery is a question of fact for the jury. (*Conner v. McGrew,* 32 Ill.App.2d 214, 177 N.E.2d 417.) Since the evidence bearing on plaintiff's care as she approached the intersection created issues of fact which should have been decided by the jury, we reverse the judgment entered by the trial judge finding plaintiff free from contributory willful and wanton misconduct as a matter of law, with directions that the issue be presented to a jury, and with the further direction that should the jury find in favor of defendants on that issue, the money judgment is to be set aside, otherwise that judgment to stand as entered. Defendants' request for remand and trial on the counterclaims is denied.

Judgments affirmed in part, reversed in part and remanded.

CRAVEN, P. J., and SMITH, J., concur.