WALLACE STROPE, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (3rd Division)    No. 77-1264

Opinion filed May 2, 1979.

988

Edward J. Egan, of Chicago Transit Authority, and Richard T. Ryan, both of Chicago, for appellant.

Joseph A. Rosin and Goulding & Kamberos, both of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff brought this action alleging that he suffered personal injuries because of the negligence of defendant. A jury returned a verdict for plaintiff in the amount of $400,000. The trial court entered judgment on the verdict and denied defendant's motion for a new trial or for judgment notwithstanding the verdict. Defendant contends on appeal that several errors committed during trial mandate a remandment for a new trial.

Plaintiff was injured on the evening of July 14, 1972. His complaint, filed December 5, 1972, alleged that as he was walking at or near the intersection of California and North avenues in Chicago, he was struck by a bus owned and operated by defendant. The case was originally tried in 1976, resulting in a mistrial when the jury was unable to agree. The present trial began in January 1977.

Plaintiff testified that on the evening in question he went to a park at about 9:30 p.m. and remained there until midnight. When he departed, he was on the southwest corner of North and California avenues. He proceeded across California Avenue to the southeast corner with the green light. He then proceeded to cross North Avenue to the northeast corner. He was in the crosswalk and had the green light. He saw no traffic to the west; to the east he saw a westbound bus a little over a block away. When he reached the middle of North Avenue, plaintiff noticed the light changed to amber. The bus was 50 or 60 feet from him in the middle westbound lane so plaintiff hurried to the curb. Plaintiff reached the curb lane and was within five feet of the curb when the bus swerved into the curb lane and struck him. Plaintiff further testified that the right front of the bus struck him and that he thought, but was not positive, that the rear wheels ran over his legs. Plaintiff had stated positively at his deposition

that the rear wheels ran over his legs. Plaintiff noticed no one else in the vicinity.

Immediately after the accident, plaintiff testified he was lying in the street about five feet from the curb in the crosswalk. Plaintiff admitted that during the first trial he had placed marks on a photograph representing where he was lying after the accident. Those marks were approximately 20 feet east of the intersection. Plaintiff stated, however, he had been mistaken, and he marked another photograph placing himself about two feet east of the crosswalk. Plaintiff stated that the bus proceeded through the light and stopped on the west side of the street. The bus driver climbed down the steps and looked back toward where plaintiff was lying. Plaintiff then lost consciousness and awakened in a hospital. He noticed his wife in the hospital room.

Aurelio Gonzalez testified over defendant's objection. On July 14, 1972, at about midnight, he left a restaurant on North Avenue west of California Avenue. As he walked, he observed a man crossing North Avenue northbound in the east crosswalk. The man had the green light. Gonzalez saw a westbound bus strike the man in the crosswalk. The bus had just pulled into the curb lane. Gonzalez shouted to the bus which had proceeded through the red light. The bus stopped for approximately five to seven seconds. Plaintiff was lying in the crosswalk and he asked the witness to call his wife. Gonzalez and an unidentified man propped plaintiff up against a "paperstand." When Gonzalez left him, plaintiff was unconscious.

Gonzalez went back to the restaurant to call the number plaintiff had given him. He gave the woman who answered the telephone his nickname, "Ramos," and his address as 2659 West North Avenue. When Gonzalez returned, he noticed an ambulance had arrived and he went home. He first received notice of the trial in late December 1976 or in early January 1977, when he was located in New Jersey.

Norman Konieski, a Chicago fireman, testified for plaintiff that on the evening in question he and his partner, John D. Stensland, responded to a call concerning an injured person. Arriving in an ambulance, they found plaintiff propped up against a news vending machine east of the intersection. Other than the fact that plaintiff appeared to be in pain and incoherent, Konieski noticed nothing about him. Konieski and his partner transferred plaintiff by ambulance to Walther Memorial Hospital.

Elica Villanueva, a nurse, testified for plaintiff that she was employed in the emergency room at Walther on the evening in question. She had no independent recollection of seeing plaintiff, and looking at the emergency room record pertaining to plaintiff did not refresh her recollection. The report was in her handwriting and she made the entries. She testified that

the contents of the report were true and correct when they were recorded. Over defendant's objection, she testified that if there were any unusual observations concerning the patient, they would have been recorded. Nothing out of the ordinary pertaining to plaintiff was contained in the record. As a rebuttal witness for plaintiff, she testified that if plaintiff had been intoxicated or if there had been a strong odor of alcohol, it would have been noted in the report.

Donald Skowronek, a bus driver employed by defendant, testified for defendant. He also testified as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) On the evening of July 13, 1972, he was driving a bus on North Avenue. He first became aware someone was claiming an accident when a passenger from a taxi boarded a bus to so inform him. Skowronek immediately called his supervisor.

As Skowronek recalled, he was proceeding west on North Avenue in the curb lane. When he reached California Avenue he stopped to pick up passengers. The bus proceeded when the light turned green. After he had passed the intersection, a passenger on the bus yelled and Skowronek stopped the bus, assuming that someone wanted to board. When no one did, he continued on his route. Skowronek testified that he did not observe anyone in the street at North and California and that his bus did not strike anyone.

Officer John D. Stensland, Konieski's partner, testified for defendant that when they arrived, they found plaintiff several feet east of the news vending machine lying flat on his back. While examining plaintiff, Stensland noticed a strong odor of alcohol; he believed plaintiff was intoxicated. Stensland wrote in the ambulance report that plaintiff had been drinking, but did not state that he was intoxicated. Sympathy for plaintiff caused Stensland to omit the fact that he thought plaintiff was drunk. During Konieski's absence, Stensland had a conversation with plaintiff who stated he intended to get even with his family for throwing him out. Plaintiff said that, as he sat at the curb, he placed his feet under the wheels of the bus. Plaintiff's family refused to come to the hospital when Stensland went to pick them up.

Over defendant's objection, Mary Strope, plaintiff's wife, testified for plaintiff as a rebuttal witness that on the morning in question two firemen came to her home and took her to the hospital. She did not notice whether her husband was intoxicated. Plaintiff was not living with her at the time of the accident and she had no knowledge of his whereabouts on the evening of the accident.

Defendant contends that the trial court erred in allowing the testimony of certain witnesses for plaintiff. Under this heading, it argues

that the court should not have permitted Aurelio Gonzalez to testify. It points out that Gonzalez' name was not listed in response to defendant's interrogatories and that the trial court should have barred his testimony.

Plaintiff's answer to defendant's interrogatory seeking names and addresses of persons who witnessed the occurrence listed "Mr. Walter Ramos, 2659 West North Avenue." Plaintiff's witness did not testify in the first trial which occurred in November 1976, and the witness was not located in New Jersey until late December 1976 at the earliest. Defendant did not serve supplemental interrogatories or requests for production subsequent to the first trial. On January 27, 1977, plaintiff's counsel informed the court that Ramos had been located and defense counsel was allowed to depose the witness on January 31, the date plaintiff's counsel represented the witness first would be available.

In his deposition, the witness testified that his real name is Aurelio Gonzalez, but that he also goes by the nickname, "Ramos." He stated that he arrived in Chicago from New Jersey on January 15, 1977. In July 1972, he resided at the North Avenue address and had lived there periodically ever since. When he dialed the telephone number given him by plaintiff, he spoke to a woman. He did not know whether it was Mrs. Strope. The woman could not understand him when he gave her his real name, so he gave his address and told her to ask for Ramos.

■■ We believe that the trial court correctly permitted Gonzalez to testify. There is no evidence that plaintiff was aware that the name of the eyewitness listed in the answer to defendant's interrogatory was, in fact, Gonzalez. Gonzalez stated that he gave his name as Ramos to the woman who answered the telephone and that he spoke to no one else concerning the accident until he was located in New Jersey. Based upon the record, plaintiff is not guilty, as defendant contends, of withholding the name of a witness from discovery. Under Supreme Court Rule 213(c), plaintiff was under no duty to supplement answers to interrogatories which were answered in good faith and were complete when made. (*Quatrano v. Marrocco* (1965), 61 Ill. App. 2d 1, 208 N.E.2d 632.) Since defendant served no supplemental interrogatories or requests for production subsequent to plaintiff's locating Gonzalez, plaintiff was not obliged to volunteer the information.

Similarly, we do not believe the fact that Gonzalez arrived in Chicago on January 15, 1977, approximately two weeks before plaintiff's counsel represented he would be available, warrants the imposition of sanctions. While the record does not disclose when plaintiff became aware that Gonzalez had returned, plaintiff's counsel did have an opportunity to talk to the witness a few days before January 31. This fact alone, however, does not indicate bad faith or lack of candor on plaintiff's part. Defendant was afforded an opportunity to examine Gonzalez prior

to his trial testimony. The trial court did not err in permitting Gonzalez to testify.

Defendant next contends that the trial court erred in permitting Elica Villanueva to testify and in admitting into evidence the emergency room record concerning plaintiff. Villanueva testified she had no independent recollection of seeing plaintiff at the hospital. She also stated that the record did not refresh her recollection, but that the information contained in the record was true and correct when she prepared it. The witness stated that if there was anything unusual about plaintiff, it would have been noted in the report. After Stensland testified for defendant that plaintiff was intoxicated, Villanueva was recalled to testify as a rebuttal witness that if plaintiff had been intoxicated or if there had been a strong odor of alcohol, she would have written it in the record.

We believe that the trial court committed no error in admitting the emergency room record into evidence. In her opening testimony, Villanueva testified only that she had brought the emergency room record which was in her handwriting and that the contents were true and correct when she prepared them. It was only after defendant had placed plaintiff's intoxication in issue that she testified as a rebuttal witness that if plaintiff had been intoxicated, it would have been contained in the report.

■■ ■ The primary requisites to the admission of a document into evidence under the doctrine of past recollection recorded are that the witness has no independent recollection of the facts and that after reviewing the document is unable to refresh that recollection. (*Healy v. City of Chicago* (1969), 109 Ill. App. 2d 6, 248 N.E.2d 679.) Plaintiff established a proper foundation when the witness stated she had no present recollection of seeing plaintiff, that the record did not refresh her recollection, but that the entries were correct when she made them. She could also properly testify that any unusual observations concerning a patient, such as intoxication, would have been reflected in the emergency room record. Defendant's reliance on *Noumoff v. Rotkvich* (1967), 88 Ill. App. 2d 116, 232 N.E.2d 107, is misplaced. In that case, this court found error in the admission of the document since it appeared that the officer was able to recall the occurrence. In the present case, the witness never testified as to the intoxication of plaintiff. She merely stated that if a patient were intoxicated or if there was a strong odor of alcohol, that fact would have been noted in her report. Whatever probative value her testimony may have on the issue of plaintiff's intoxication, it does not affect the admissibility of the report itself under past recollection recorded.

Defendant also argues that the trial court erred in allowing Mary Strope, plaintiff's wife, to testify. The apparent basis of the argument is that plaintiff failed to list her name as a witness in his answers to defendant's interrogatories.

■ Mary Strope testified in rebuttal that in the early hours of the morning of July 14, 1972, two firemen came to her home and took her to the hospital. Her testimony contradicted that of Stensland who stated that plaintiff's wife refused to come to the hospital. The trial court correctly ruled that since the witness was called in rebuttal and since the need for such witnesses is not known until an opponent offers evidence, plaintiff was under no duty to list her in his answers to defendant's interrogatories. *Grant v. Paluch* (1965), 61 Ill. App. 2d 247, 210 N.E.2d 35.

Defendant argues in the alternative that the substance of Mary Strope's testimony was not rebuttal, but was, in fact, corroboration of Gonzalez' testimony that he spoke to a woman at the telephone number given by plaintiff. This contention is without merit. The only mention of Gonzalez occurred in the following exchange:

"Q: On the morning of July 14, 1972, did anybody come to your house?
A: I believe Mr. Ramos.
Q: Did anybody come to your house, dear, not call you?
✿ ✿ ✿
A: Two firemen came and picked me up."

We do not believe this innocuous and apparently mistaken reference to Ramos altered the witness' status as a rebuttal witness. The trial court properly permitted plaintiff's wife to testify as a rebuttal witness.

Defendant next contends that the trial court erred in excluding the testimony of certain defense witnesses. Defendant initially argues that the trial court erroneously excluded the testimony of Officer Robert Quaid of the Chicago Police Department. On January 10, January 27, and February 2, 1977, plaintiff served upon defendant notices to produce pursuant to Supreme Court Rules 214 and 237. (Ill. Rev. Stat. 1977, ch. 110A, pars. 214, 237.) In part, the notices requested names and addresses of all persons known to defendant "who have knowledge or claim to have knowledge or information of the occurrence." Officer Quaid's name was not revealed in response to these requests. In the trial court defendant argued it was not required to list Quaid because he was a "post-occurrence" witness.

In defendant's offer of proof, Quaid testified that on July 14, 1972, he came to the assistance of an injured person on North Avenue near California. He was riding in a squad car when he saw plaintiff. Quaid saw plaintiff lying 10 or 15 feet east of the news vending machine, propped up with his legs on the street. Upon noticing the injuries to plaintiff's feet, he called an ambulance. Plaintiff was incoherent and moaning. Quaid remained with plaintiff until the ambulance arrived. The number of Quaid's police beat, 1406, was recorded on the ambulance report prepared by Stensland.

■ The appropriate sanction to be imposed when a witness' name is withheld rests within the sound discretion of the trial court. (*Burns v. West Chemical Products, Inc.* (1973), 12 Ill. App. 3d 947, 299 N.E.2d 455; *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 295 N.E.2d 329.) The trial court's exercise of its discretion in such matters will not be disturbed unless it has been abused. (*Mason v. Village of Bellwood* (1976), 37 Ill. App. 3d 543, 346 N.E.2d 175.) Factors to be considered in determining whether exclusion of a witness is an appropriate sanction include surprise to the adverse party, the harm done to his case, the nature of the proposed testimony, the timeliness of the objection to the testimony, and whether the omission of the witness' name appears to have been intentional or inadvertent. *Rosales v. Marquez* (1965), 55 Ill. App. 2d 203, 204 N.E.2d 829.

■■ The trial court concluded that the balance of these factors weighed in plaintiff's favor, and we cannot say that the court abused its discretion in making such a determination. Although defendant argued in the trial court that it was not required to list Quaid because he was a post-occurrence witness, the trial court properly determined that Quaid fell within the category of persons "who have knowledge * * * of the occurrence."

■ Defendant points out that Quaid's name, as opposed to his beat number, was not discovered until January, 1977. Quaid, however, was subpoenaed by defendant on January 6, 1977, and all three of plaintiff's notices to produce were served after that date. The late discovery of Quaid did not excuse defendant from revealing his name when it was requested in an authorized manner.

It does not appear that a less severe sanction, such as a recess to allow plaintiff to examine the witness, would have been sufficient. An investigation of the substance of Quaid's testimony would have entailed locating and examining Quaid's partner who was driving the squad car on the night of the occurrence. The trial court, in its discretion, could properly decide that exclusion of the witness was warranted under these circumstances.

■■ In its reply brief, defendant for the first time raises an objection to the exclusion of Quaid's testimony based upon the form of the notice. It argues that a notice to produce pursuant to Supreme Court Rules 214 and 237 calls for documents and tangible things, and that, therefore, defendant was not obligated to reveal Quaid's name and address. Defendant's failure to raise this objection in the trial court, in its post-trial motion, and in its initial brief constitutes a waiver of the objection. Ill. Rev. Stat. 1977, ch. 110, par. 68.1(2); Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(iii); *Kooyumjian v. Stevens* (1956), 10 Ill. App. 2d 378, 135 N.E.2d 146.

Defendant further contends that the trial court erred in excluding the

deposition testimony of Victoria Pogioli. Prior to trial, defendant served upon plaintiff a notice indicating that the discovery deposition of Pogioli, a nurse, would be taken in Stillwater, Oklahoma.

■■ According to Supreme Court Rules 202 and 206 (Ill. Rev. Stat. 1977, ch. 110A, pars. 202, 206), if a deposition is to be taken for use as evidence, the notice must so specify. Since defendant's notice indicated that a discovery deposition was to be taken, Pogioli's deposition could only be used for discovery purposes. Reading a discovery deposition to the jury is not permitted, and the trial court committed no error in excluding the deposition.

■■ Defendant also argues that the trial court erred in not permitting it to read to the jury as admissions certain portions of plaintiff's discovery deposition and of his testimony at the first trial. Defendant points to three instances. The first excerpt pertains to the site of the accident. When asked where he was when he was hit, plaintiff stated in his deposition: "Well, there is a newsstand on the corner and I was on the east side of the newsstand." At trial, plaintiff admitted that he had made that statement. Plaintiff was also cross-examined as to whether it was the front or rear wheels of the bus which ran over his legs. When he replied that he did not know, defense counsel read to him the following excerpts, the first from his deposition and the second from his testimony at the prior trial:

"Q: And the right front wheels didn't touch you in any way?
A: Not that I remember.
Q: And the right rear wheels came into contact with your legs?
A: Yes, sir.

*   *   *

Q: Now, Mr. Strope, it's your testimony today that the rear wheels of the bus went over your legs?
A: Yes, sir.
Q: And the front wheels never went over your legs?
A: No, sir. I don't believe so."

Plaintiff admitted making both these statements.

The trial court did not err in refusing to allow defense counsel to read these statements to the jury as admissions. Plaintiff did not deny that he had made the statements. The substance of plaintiff's prior testimony was developed in great detail by defendant during cross-examination. Defense counsel argued this evidence to the jury in his closing argument. The jury was sufficiently apprised of the existence and substance of plaintiff's prior testimony to enable it to consider this evidence, along with all the other evidence in reaching its verdict.

Defendant finally contends that an accumulation of erroneous rulings by the trial court warrants reversal of the case for a new trial. While we

shall comment on each claim of error, we believe none of the contentions are of merit.

■■ Defendant first charges that plaintiff's counsel misquoted certain testimony in attempting to impeach Officer Stensland. The testimony related to where Stensland found plaintiff. Instead of referring to the "news vending machine," plaintiff's counsel quoted Stensland as saying he found plaintiff by the "newsstand," thus, defendant argues, confusing the jury. Our reading of the record reveals that the misstatement complained of by defendant was corrected by plaintiff's counsel.

Defendant also complains that plaintiff's counsel was permitted to improperly cross-examine the bus driver, Donald Skowronek. One illustration of defendant's complaints is that plaintiff's counsel used "when" instead of "where" in reading from Skowronek's deposition. Since the misquote was corrected almost immediately, no prejudicial error occurred. We likewise do not accept defendant's argument that other portions of Skowronek's cross-examination were conducted improperly. Plaintiff was attempting to impeach the witness through use of prior testimony. If defendant believed this attempted impeachment cast an unfair or inaccurate light on Skowronek's testimony, it had sufficient opportunity to reform the witness on re-direct examination.

Defendant contends that it was reversible error to give an instruction to the jury stating that there was an ordinance providing that a driver of a vehicle must exercise care to avoid striking a pedestrian. The instruction accurately set forth the duty of a driver to pedestrians, and there was no error in its submission to the jury.

Under its miscellaneous accumulation of errors argument, defendant also complains that the court erred in denying its motion for a mistrial. During the trial it was learned that Skowronek, the bus driver, had talked to one of the jurors and had said, "someone was lying." When asked about the conversation, Skowronek stated he thought he knew one of the jurors and during a recess simply told him that he looked familiar. When the juror replied that he did not know Skowronek, the latter stated he returned to the courtroom. The trial court correctly refused to grant defendant's motion for a mistrial for the indiscretion of defendant's own witness.

Under this last heading, defendant finally contends that it was prejudiced by comments made by the trial court during defense counsel's closing argument. Plaintiff objected to the manner in which defense counsel presented the substance of plaintiff's cross-examination to the jury. Defense counsel stood in front of the jury, transcript open in one hand, the other hand raised as if taking an oath, and stated, " 'Isn't it a fact, Mr. Strope, that at the time of this accident you were lying 15 or 20 feet

east of the newsstand on the curb?' And his answer, 'That's right.' "
Defense counsel was not, as it is contended, prevented from arguing this
evidence to the jury. Nor did the trial court in its comments imply that the
jury could disregard the evidence. The court sustained plaintiff's
objection to defense counsel's reading or appearing to read from
plaintiff's testimony. Defendant was not in any manner prejudiced by the
trial court's comments.

For the reasons stated, the judgment of the circuit court of Cook
County is affirmed.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.