JANE A. NOLAN, Plaintiff-Appellant, v. DONALD R. ELLIOTT *et al.*, Defendants-Appellees.

Second District No. 2—88—0547

Opinion filed March 3, 1989.

Coryn, Walker & Meehan, of Rock Island (William M. Walker, of counsel), for appellant.

Janella L. Barbrow, John J. Kohnke, and Jay S. Judge, all of Judge & Knight, Ltd., of Park Ridge (Patrick J. Fanning, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Jane A. Nolan, filed a negligence action against defendants, Donald R. Elliott and his employer, the City of Rochelle, after she was injured in an automobile accident in July 1984. The jury returned a verdict for both defendants and answered a special interrogatory finding plaintiff to be the sole proximate cause of the accident. Plaintiff's post-trial motion was denied, and this appeal followed. We affirm.

On July 14, 1984, at approximately 1:30 p.m., plaintiff was driving her 1979 Ford station wagon east on Newburg Street in Rockford, Il-

linois. She had picked up her sister and four other girls in Rockford and was returning home to Bettendorf, Iowa. She was in the left-hand lane for through traffic when she approached the intersection of Newburg and Mulford. It was undisputed that she was driving within the speed limit and had a green light when she entered the intersection.

Defendant Donald Elliott was driving an ambulance north on Mulford in the left-hand lane for through traffic. Mulford is a north/south street having two through lanes of traffic in each direction and a left-turn lane. The sirens and flashing lights were operating on the ambulance at the time defendant approached the intersection. The light was red for defendant at the time he approached the intersection. After slowing down and checking for traffic at the intersection, defendant proceeded into the intersection. He increased his speed in the intersection and was struck by plaintiff's station wagon.

The front end of the station wagon hit the driver's side of the ambulance. The impact caused the station wagon to spin around and strike the ambulance again, this time in the rear. The ambulance continued through the intersection, ending up approximately 100 feet north of Newburg with two wheels up on the median.

Plaintiff testified that she was driving within the speed limit as she was approaching the intersection. She remembered having a green light but that she was afraid the light was about to change to yellow. She stated that all of the car windows were up, the air conditioning was on, and the radio was playing at a low volume. She noticed several cars heading in the same direction as she was stopped in the right-hand lane at the green light. Plaintiff admitted that there were no obstructions to her view of the traffic as she entered the intersection, but at no time before the impact did she hear or see the ambulance.

Plaintiff also testified that she was severely injured as a result of the accident. She had numerous cuts on her face and legs. She also injured her neck, requiring surgery and extensive rehabilitation. The injuries forced her to delay her starting date with her new job, and she is still unable to participate in sporting activities without experiencing a great deal of neck and back pain.

Defendant Donald Elliott testified that he became a paid on-call fire fighter in February 1984. On July 14, 1984, Elliott and Bill Winebaugh (an emergency medical technician) went to Rochelle Community Hospital to pick up a patient to transfer to St. Anthony's Hospital in Rockford. This was defendant's first nonlocal emergency run as the driver of an ambulance. Defendant stated that the flashing lights were on at all times during the run, and the sirens were on during

the run through the city streets. Defendant noted that he approached the intersection of Newburg and Mulford with caution because Winebaugh stated that he had seen numerous accidents at the intersection in the past. Defendant continued to slow down as he got closer to the intersection, eventually reducing his speed to 10 miles per hour. He did not notice any cars in the intersection, although he admitted that the stopped cars may have obstructed his vision. He also admitted that the light was red for him. Defendant began to accelerate after entering the intersection, with his speed estimated at 15 to 20 miles per hour at the time of the accident. Defendant stated that he did not see plaintiff's car until he entered the intersection. At that time, there was no way for him to brake or otherwise avoid the collision.

Several eyewitnesses to the accident testified at trial. All of the witnesses were in automobiles at various locations at the intersection. All of them testified that the ambulance had its flashing lights on, and all but one actually heard the siren. All of the witnesses agreed that plaintiff was driving within the speed limit and that defendant had slowed down prior to entering the intersection.

On February 25, 1988, the jury returned a verdict in favor of both defendants. The jury also determined that plaintiff's conduct was the sole proximate cause of the accident. Following the denial of plaintiff's post-trial motion, this appeal followed.

Plaintiff raises four assignments of error on appeal: (1) whether the jury verdict and special interrogatory finding were against the manifest weight of the evidence; (2) whether the court erred in allowing a previously unidentified witness to testify at trial; (3) whether the court erred in instructing the jury that plaintiff had a duty to sound her horn before entering the intersection; and (4) whether the cumulative effect of other alleged errors deprived plaintiff of a fair and impartial trial.

Plaintiff first contends that the jury's finding that defendants were guilty of no negligence whatsoever is against the manifest weight of the evidence. Plaintiff specifically notes that defendant disregarded a traffic light and entered a dangerous intersection with some obstructions to his vision. Plaintiff contends that this conduct, coupled with the fact that defendant began accelerating after he entered the intersection, clearly establishes defendant's negligence as a matter of law. Plaintiff also asserts that defendant's conduct was a proximate cause of the accident.

A jury verdict will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447; *Coldwell Banker*

*Residential Real Estate Services of Illinois, Inc. v. Jepsen* (1988), 172 Ill. App. 3d 662, 666, 527 N.E.2d 79.) A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly apparent or when the jury verdict appears to be arbitrary and unsupported by the evidence. (*Coldwell Banker*, 172 Ill. App. 3d at 666; *Greenfield v. Consolidated Rail Corp.* (1986), 150 Ill. App. 3d 331, 337, 500 N.E.2d 1083.) A court of review must consider the evidence in the light most favorable to the appellee when determining whether a jury verdict is against the manifest weight of the evidence. *Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 273, 512 N.E.2d 105.

■ After examining the evidence in the case at bar in the light most favorable to defendants, we cannot agree with plaintiff's contention that the verdict was against the manifest weight of the evidence. The record reveals that defendants were operating an emergency vehicle with all flashing lights and sirens on. The purpose of using the emergency lights and sirens is to warn pedestrians and other drivers of the danger present so that they may proceed with caution to avoid any accidents. (Ill. Rev. Stat. 1987, ch. 95½, par. 12—601(b); *Kirshenbaum v. City of Chicago* (1976), 43 Ill. App. 3d 529, 532-33, 357 N.E.2d 571.) In addition, all drivers have a duty, regardless of right-of-way, to maintain a proper lookout and to take all necessary precautions to avoid an accident. (*Olson v. Ortiz* (1978), 60 Ill. App. 3d 787, 789, 377 N.E.2d 350.) It was undisputed that all of the vehicles at the intersection either heard or saw the ambulance, except for plaintiff. In addition, all the drivers had stopped at the intersection to allow the ambulance to proceed, except for plaintiff. The evidence shows that plaintiff neither maintained a proper lookout nor took all necessary precautions to avoid an accident before she entered the intersection.

■ Plaintiff contends that she never heard or saw the ambulance and that she had the right-of-way at the intersection because she had the green light. Furthermore, plaintiff notes that defendant should have seen her vehicle before he entered the intersection and by not doing so was negligent as a matter of law. We note that section 11—306 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—306) controls the duties of drivers at a controlled intersection. The Code provides that vehicular traffic facing a green light may proceed through the intersection but "shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—306(a)(1).) Thus, a motorist's right-of-way at an intersection is not an absolute right. (*Brown v. G & M Distributors, Inc.* (1984), 122 Ill. App. 3d 435, 439, 461 N.E.2d 95;

*Lode v. Mercanio* (1979), 77 Ill. App. 3d 150, 154, 395 N.E.2d 1014.) Had this accident involved two ordinary vehicles, we would agree with plaintiff's contention that defendant's conduct in proceeding through the red light would be negligent conduct. However, the Code specifically provides exceptions for emergency vehicles. Section 11–205 allows the driver of an emergency vehicle to proceed through a red light after slowing down and making sure the intersection is safe to proceed through. (Ill. Rev. Stat. 1987, ch. 95½, par. 11–205(c)(2).) In addition, section 11–1421 permits the driver of an ambulance to deviate from the traffic rules when proceeding on an emergency run. Ill. Rev. Stat. 1987, ch. 95½, par. 11–1421(a)(1).

Plaintiff cites *Mayfield v. City of Springfield* (1982), 103 Ill. App. 3d 1114, 432 N.E.2d 617, for the proposition that a driver of an emergency vehicle must proceed with caution when disobeying the traffic laws. In *Mayfield,* a police officer drove into a crowded intersection with his vision obstructed and hit the plaintiff's car in the intersection. (103 Ill. App. 3d at 1116.) It was undisputed that the police officer drove through a red light and was unable to stop his vehicle in time before the collision. The court ruled that the plaintiff's conduct was blameless in that she made a prudent attempt to stay out of the emergency vehicle's way. (103 Ill. App. 3d at 1119.) The court noted that the police officer's conduct would have been excused had he been operating his vehicle "within the legal safe harbor created by section 11–205." 103 Ill. App. 3d at 1117.

We find the facts in our case to be very different from those present in *Mayfield.* It was undisputed that defendant Elliott slowed the ambulance down as he approached the intersection. Testimony indicated that the ambulance was traveling 40 to 45 miles per hour on Mulford, and it slowed down to 20 to 25 miles per hour approximately 100 feet from the intersection. By the time defendant reached the intersection he was driving about 10 miles per hour. It was not until he proceeded into the intersection that he began to accelerate. We do not find defendant's conduct to be negligent and instead believe that he entered the intersection cautiously and with due regard for the safety of the other vehicles. Therefore, we do not find the jury verdict to be contrary to the manifest weight of the evidence.

Plaintiff next contends that the trial court committed reversible error in allowing Nurse Roberta Isham to testify at trial. Plaintiff claims that the nurse was not disclosed as a trial witness until the day before the trial and to allow her to testify constitutes an abuse of discovery and a surprise to plaintiff. Furthermore, plaintiff asserts that the testimony of the nurse was not relevant or material to any issue

in the case.

◼ In response to plaintiff's first contention, we note that whether an undisclosed witness can testify at trial rests within the sound discretion of the trial court. (*Strope v. Chicago Transit Authority* (1979), 71 Ill. App. 3d 987, 995, 389 N.E.2d 1374; *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 722, 295 N.E.2d 329.) The trial court's decision will not be disturbed on appeal unless we find an abuse of discretion. (*Strope*, 71 Ill. App. 3d at 995.) Some factors to consider in determining whether a witness should be excluded from testifying include surprise and prejudice to the opposing party, the nature of the proposed testimony, the timeliness of the objection to the testimony, and whether the omission of the witness' name was intentional or inadvertent. *Strope*, 71 Ill. App. 3d at 995; *Ocasio-Morales*, 10 Ill. App. 3d at 722.

◼ We find the trial court's admission of Nurse Isham's testimony to be a proper exercise of its discretion. It was undisputed that defendants did not list Nurse Isham on plaintiff's last set of interrogatories. Defendants claim that they did not list her because her identity was not known at that time. It was not until the evidence deposition of Dr. Young Ki Kim was taken that defendants found it necessary to call Nurse Isham. At the evidence deposition, Dr. Kim questioned whether the ambulance was actually on an emergency run at the time of the accident. Dr. Kim stated that he wrote down on the patient's order sheet that she should be transferred to a different hospital. He noted that the transfer was done at the patient's request and that he never directed the ambulance driver to disregard the traffic laws during the transfer. It was undisputed that Nurse Isham was the person who completed the order sheet for the patient.

The trial court determined that defendants disclosed the identity of Nurse Isham as soon as her identity was ascertained. In addition, the court specifically ruled that the nurse's testimony would be limited to her notations on the order sheet regarding the emergency nature of the transfer. The court also noted that plaintiff would not be prejudiced by this decision because she still had the option of calling Dr. Kim, either in person or by use of the evidence deposition, to rebut the testimony. Furthermore, the court found the nurse's testimony to be relevant to the issue of whether the ambulance was on an emergency run at the time of the accident. Defendants offered to stipulate that the ambulance was on an emergency run so that the nurse's testimony would be unnecessary, but counsel for plaintiff responded: "Call Nurse Isham. Let's just stop the argument, let's just call Nurse Isham." Furthermore, we believe the nurse's testimony to

be relevant and material to the issue of whether the ambulance was actually on an emergency run. We do not believe that defendant's failure to identify Nurse Isham in the interrogatories precluded her from testifying at trial. See *Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 466 N.E.2d 1261 (trial court did not abuse discretion in permitting witness not identified in interrogatory answers from testifying).

■ Plaintiff's third contention is that the trial court committed reversible error in instructing the jury that plaintiff should have sounded her horn before entering the intersection. The trial court, over plaintiff's objections, gave defendants' instruction No. 9, based upon section 12—601 of the Code, which provided:

"The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway." (Ill. Rev. Stat. 1987, ch. 95½, par. 12—601(a).)

The following discussion occurred during the jury instruction conference:

"MR. WALKER [attorney for plaintiff]: *** I don't find that anywhere in the statute that somebody is suppose [*sic*] to blow their horn on a green light. *** [T]hat statute is not designed to, for a person approaching an intersection, a green light intersection, blowing your horn.

THE COURT: How about when a vehicle is in the intersection when you got the green light?

MR. WALKER: I don't know.

MR. FANNING [attorney for defendant]: It's exactly what it's designed for, Judge, and if you'll read the statute, you'll find that it's exactly what it's designed for.

THE COURT: Alright. Leave it in."

The standard for determining the adequacy of jury instructions is whether the instructions were sufficiently clear to avoid misleading the jury, while at the same time fairly and accurately stating the law. *Coldwell Banker*, 172 Ill. App. 3d at 667; *Black v. Peoria Marine Construction Co.* (1987), 160 Ill. App. 3d 357, 364, 513 N.E.2d 622.

Plaintiff contends that she could not have been expected to blow her horn before entering the intersection because the traffic light was green and she had observed no vehicles in her way. She did not see the ambulance enter the intersection, and she thus contends that the instruction as to sounding her horn was prejudicially misleading and was reversible error.

Defendants respond that plaintiff should have seen the ambulance

enter the intersection and that she should have sounded her horn before entering the intersection. Defendants note that this is especially true because all of the other vehicles at the intersection had seen the ambulance and had been able to pull over to the side of the road and let the ambulance pass.

We do not believe that defendants' instruction No. 9 was improper. Even though plaintiff testified she did not see the ambulance before the collision, we believe there was sufficient evidence before the jury that she should have seen or heard the ambulance prior to entering the intersection. Thus, it was not improper to give the instruction because it was a question of fact for the jury to consider whether it was "reasonably necessary" for plaintiff to sound her horn before entering the intersection. *Thomas v. Consolidated School District No. 429* (1972), 7 Ill. App. 3d 45, 50, 286 N.E.2d 536; *Schmitt v. Chicago Transit Authority* (1962), 34 Ill. App. 2d 67, 78, 179 N.E.2d 838.

Plaintiff also contends that she was deprived of a fair trial based on the cumulative effect of certain trial court errors. Specifically, plaintiff argues that the trial court ruled incorrectly on certain objections to evidence and argument.

■ Plaintiff first notes that the trial judge improperly prevented eyewitness James Goodin from testifying as to the proper procedures for an ambulance driver to follow while on an emergency run. Mr. Goodin was employed as an ambulance driver from 1960 to 1963 and had actually driven an ambulance at least 12 times on emergency runs. Plaintiff did not disclose Mr. Goodin as an expert witness because she did not consider his testimony to be that of an expert. The trial court disagreed, stating: "He's testifying as to the standard and unless he's a qualified expert, he can't do that, and you haven't disclosed him and then you can't ask him those questions."

We agree with the trial court's decision in barring the testimony of witness Goodin as to the proper procedures for ambulance drivers to follow when operating on an emergency run. The testimony as to what the proper standard of care is for an ambulance driver is beyond the knowledge of an average person and thus constitutes expert testimony. (107 Ill. 2d R. 220(a)(1).) It is undisputed that plaintiff never disclosed Goodin as an expert witness. Supreme Court Rule 220 specifically provides that the failure to disclose an expert will result in the expert's testimony being barred. (107 Ill. 2d R. 220(b)(1); *Castro v. South Chicago Community Hospital* (1988), 166 Ill. App. 3d 479, 482-83, 519 N.E.2d 1069.) We do not believe that the trial court erred in excluding Goodin's testimony relating to proper procedures for am-

bulance drivers to follow.

■■ Plaintiff next contends that the trial court erred in permitting eyewitness Bill Winebaugh to testify as a reconstruction expert. A reconstruction expert is one who seeks to recreate the accident from a given set of facts. (*Gale v. Hoekstra* (1978), 59 Ill. App. 3d 400, 410-11, 375 N.E.2d 456.) In *Gale*, the court held that a police officer could testify regarding the absence of skid marks on the shoulder of the road near the point of impact of an accident. (59 Ill. App. 3d at 410-11.) The court concluded that the officer was testifying as to observations he made of physical facts, and not as to interpretations of data he received to reconstruct the accident. (59 Ill. App. 3d at 411.) We do not find any indication in the record that Bill Winebaugh was testifying as a reconstruction expert. Winebaugh testified that he was the emergency medical technician in the ambulance at the time of the accident. After the accident, Winebaugh left the ambulance and observed the tire marks on the street from the ambulance. Plaintiff claims that Winebaugh was testifying as an expert because he testified as to the tire marks on the pavement. We disagree. It is apparent from the record that Winebaugh was testifying only as to what he observed at the scene of the accident. We find no error in allowing him to testify as to the skid marks based on his own personal observations at the scene of the accident.

■■ Plaintiff also claims that the trial court improperly refused to admit into evidence a diagram of the accident scene made by eyewitness Luther Rowlett. The court refused to admit the diagram because it was inaccurate and did not reflect the witness' testimony. The court determined that the diagram was misleading and would only serve to confuse the jury. We note that the admissibility of diagrams rests within the sound discretion of the trial court. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 706, 450 N.E.2d 1199.) The trial court's ruling will be disturbed only on a showing of clear abuse. (*Burke v. Toledo, Peoria & Western R.R. Co.* (1986), 148 Ill. App. 3d 208, 213, 498 N.E.2d 682.) We find nothing in the record to indicate that the trial court abused its discretion in refusing to admit a diagram into evidence when the diagram would only confuse or mislead the jury.

■■ Plaintiff further claims that the trial court erred in barring any testimony relating to the injuries that the passengers in plaintiff's car received as a result of the collision. It is plaintiff's position that the jury should have heard this testimony to explain why the passengers were unable to testify as to the details of the accident. The court determined that the extent of the passengers' injuries was not rele-

vant to plaintiff's case and would only serve to prejudice the defendants. The decision to exclude testimony is within the sound discretion of the trial court. (*Peterson Welding Supply Co. v. Cyrogas Products, Inc.* (1984), 126 Ill. App. 3d 759, 766, 467 N.E.2d 1068.) We do not believe the trial court abused its discretion in refusing to allow testimony concerning the extent of the passengers' injuries. The record indicates that the passengers, other than plaintiff's sister, were all sleeping or had their eyes closed just prior to the accident. Thus, we believe the extent of the passengers' injuries had nothing to do with why the passengers were unable to testify as to their personal observations just prior to the accident.

Plaintiff also asserts that defendants violated the order *in limine* by referring to plaintiff's father, an attorney, and in mentioning the existence of insurance to the jury. Plaintiff notes that both of these violations of the order *in limine* were improper and prejudiced the jury. We disagree. The *in limine* order provided that defendants were not allowed to "mention, refer to, interrogate concerning *** the pecuniary circumstances of the family of plaintiff Jane Nolan." We do not believe a reference to plaintiff's father as an attorney in any way violated the order, as it did not reveal the pecuniary circumstances of plaintiff's family.

In addition, we do not believe that plaintiff was prejudiced by having a reference to insurance brought to the jury's attention. On cross-examination, a defense witness testified:

"Q. Did you, at one time, indicate it was about a half block to two-thirds a city block, isn't that right?

A. Yeah, I think a gentleman came and took a deposition from Country Companies within a month, month-and-a-half after the accident ***."

Plaintiff moved for a mistrial based on the fact that the jury heard the witness mention "Country Companies," an insurance company. Not every reference to an insurance company will require a mistrial. (*Goldstein v. Scott* (1982), 108 Ill. App. 3d 867, 878-79, 439 N.E.2d 1039; *Twait v. Olson* (1982), 104 Ill. App. 3d 191, 196, 432 N.E.2d 1244.) The trial judge determined that the witness' reference to insurance was unintentional and denied plaintiff's motion for a mistrial. We do not believe the trial court abused its discretion in refusing to declare a mistrial based on one reference to insurance and in a context which does not establish prejudice.

We do not find that plaintiff was prejudiced by any of the trial court's rulings. In addition, we believe that all parties received a fair and impartial trial. We find no reversible error in the conduct of the

trial or in the giving of jury instructions. For the reasons stated above, we affirm the judgment of the circuit court of Ogle County.

Affirmed.

LINDBERG and WOODWARD, JJ., concur.