WILLIAM E. MAYFIELD, Adm'r of the Estate of Mary Denise Mayfield, Deceased, Plaintiff-Appellant, v. THE CITY OF SPRINGFIELD, Defendant-Appellee.—ANNETTE NAPIER, Guardian of the Estate of Florence Moreth, a Physically Infirm Person, Plaintiff-Appellant, v. DANIEL R. HUGHES, Defendant.—(THE CITY OF SPRINGFIELD, Defendant-Appellee.)

Fourth District    Nos. 17096, 17142 cons.

Opinion filed January 22, 1982.—Modified on denial of rehearing March 29, 1982.

Londrigan & Potter, P. C., of Springfield (James C. Craven, of counsel), for appellant William E. Mayfield.

Jefferson Lewis and Nolan Lipsky, both of Petersburg, for appellant Annette Hapier.

D. Bradley Blodgett, of Gillespie, Cadigan & Gillespie, of Springfield, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

A tragic auto collision in Springfield, Illinois, on July 2, 1978, resulted in two lawsuits filed on behalf of different plaintiffs against the same defendant. A Sangamon County Circuit Court jury concluded that the defendant was not negligent under the circumstances and denied recovery to both plaintiffs following a consolidated trial. Both plaintiffs appealed the verdict of the jury, and because of the near identity of the issues raised by the briefs of the parties, we determine the outcome of both appeals with this consolidated opinion. A factual background follows.

On July 2, 1978, just minutes before 7 p.m., Mary Denise Mayfield was driving her 1978 Oldsmobile Cutlass in a southerly direction on Eleventh Street in Springfield, Illinois. She was en route to Sunday night mass at Sacred Heart Church and approached the intersection of Eleventh Street and North Grand Avenue with her left turn signal operating, indicating an easterly turn on to North Grand. The traffic light which controlled the intersection at Eleventh and North Grand was green, indicating Ms. Mayfield had the right-of-way, and she proceeded into the intersection.

North Grand is an east-west street having two through lanes of traffic

in each direction. In addition, North Grand has a supplemental lane in each direction commencing 90 feet from either side of the Eleventh Avenue intersection; these lanes are marked for use as left turn lanes onto Eleventh. The corners of the intersection are identified by the buildings thereon standing. On the southwest corner is a brick and block building owned by Florence Moreth. It houses the Trio Lounge. On the northwest corner is a multistory building which shades the intersection as the sun sets in the early evening. Finally, on the northeast corner is the Lanphier High School gymnasium. It blocks the view of southbound motorists on Eleventh looking east toward North Grand and of westbound motorists on North Grand looking North toward Eleventh.

On the date and at the time previously stated, Springfield city policeman Daniel Hughes was driving his squad car in a westerly direction on North Grand, approaching the intersection of North Grand and Eleventh. Approximately two blocks away from the subject intersection, the police dispatcher advised Hughes by radio of a "disturbance at Duncan Farms." Another officer, hearing the same call, acknowledged by radio that he was proceeding to the scene of the disturbance. Officer Hughes, intending to provide backup assistance at the disturbance, continued westerly on North Grand, but now utilizing emergency procedures, having activated his squad car's flashing lights and siren. As Hughes came upon the intersection with Eleventh Street the traffic light governing the right-of-way for westbound traffic was red and cars were stopped in both westbound lanes. Officer Hughes, in a hurry to respond to a situation he deemed urgent, swerved into the left turn lane to pass by the traffic stopped for the red light. He entered the intersection and struck the vehicle driven by Ms. Mayfield.

The impact spun the Mayfield auto completely around and propelled it backwards in a southwesterly direction, striking the curb on the southwest corner of the intersection. Upon hitting the curb, the Oldsmobile became airborne and crashed through the front end of the Trio Lounge, about three or four feet above the ground and came to rest. The front wall of the building was knocked down, causing damage in the amount of $14,803.

Although shaken up by the force of the impact, Officer Hughes recovered his wits and radioed for assistance. Help arrived soon thereafter, but the efforts of paramedics and others were ineffective in saving the life of Ms. Mayfield. Subsequently, her father and the administrator of her estate, William E. Mayfield, brought suit against the City of Springfield and Officer Hughes alleging a cause of action under the Illinois Wrongful Death Act (Ill. Rev. Stat. 1977, ch. 70, par. 2). Sometime later, Annette Napier, on behalf of her ward, Florence Moreth, brought an action against the same two defendants seeking redress for property

damage to the Trio Lounge structure. Before trial, the two actions were consolidated and defendant Hughes was dismissed from both suits.

After a trial at which the Sangamon County jury heard extensive evidence and examined numerous photographs of the tragic scene, the 12 returned verdicts for the defendant City. The jury was unable to reach a unanimous verdict on a special interrogatory regarding the contributory negligence of the decedent, Ms. Mayfield. Both plaintiffs filed post-trial motions urging the circuit judge to enter judgments *non obstante vere- dicto*. Those post-trial motions were denied, and by notice of appeal, both plaintiffs ask us to review that decision.

■■ At the outset, we should note that under typical circumstances, vio- lations of traffic control laws constitute *prima facie* evidence of negli- gence in resultant civil actions. (*Csalany v. Senesac* (1968), 91 Ill. App. 2d 241, 234 N.E.2d 72; *Gauchas v. Chicago Transit Authority* (1965), 57 Ill. App. 2d 396, 206 N.E.2d 752.) Were these typical circumstances, the admitted conduct of Officer Hughes in proceeding against a red light through the intersection at Eleventh Street and North Grand would be actionable negligence. However, the law provides an exemption for emergency circumstances. "The driver of an authorized emergency ve- hicle·may * * * [p]roceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation." (Ill. Rev. Stat. 1979, ch. 95½, par. 11—205(c)(2).) This suspension of the rules of the road is available only "when responding to an emergency call" (Ill. Rev. Stat. 1979, ch. 95½, par. 11—205(b)) and only when "due regard for the safety of all persons" is exhibited (Ill. Rev. Stat. 1979, ch. 95½, par. 11—205(e)). This special rule governing drivers of emergency vehicles permits them to cautiously circumvent strict application of the traffic laws in the interest of hastening their mission, thus promoting the public safety and welfare. It does not permit them carte blanche authority to charge into heavily traveled urban intersections in defiance of all reason as if bearing the colors for General Pickett. To so construe the authority of section 11—205 would undermine the very purposes of public safety and welfare that the statute was intended to serve. What would otherwise be *prima facie* evidence of negligent conduct on the part of Officer Hughes may be excused from creating legal liability sounding in tort if the conduct is within the legal safe harbor created by section 11—205.

In refusing to direct a verdict for the plaintiffs, the trial court appar- ently believed that the evidence could be construed to support a finding that Officer Hughes was proceeding in a manner consistent with the safe operation of his squad car, or alternatively, in the case of plaintiff May- field, that the decedent's own negligence barred recovery. We cannot agree.

■■ In reviewing the trial court's denial of a judgment *non obstante vere-*

*dicto*, we can reverse only if we determine that from all the evidence, when viewed in its aspect most favorable to defendant, the conclusions to be drawn so overwhelmingly favored the plaintiffs that no contrary verdict could ever stand. (*L. D. Brinkman & Company-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 394 N.E.2d 1221; *Hanson v. Cresco Lines, Inc.* (1978), 57 Ill. App. 3d 168, 372 N.E.2d 936.) The uncontroverted evidence below was that as Officer Hughes approached the intersection in question, his view of traffic on Eleventh was blocked by the school gymnasium, his observation of the intersection was obstructed by vehicles stopped in both westbound lanes of North Grand, his vision was impaired by the setting sun glaring in his eyes, and his perception of the intersection was diminished by the long shadows cast by the multistory building on the intersection's northwest corner. Despite being so blinded, Officer Hughes swerved into the 90-foot long turn lane and entered the intersection with sufficient speed to impel the decedent's full-size automobile across the intersection at right angles to its previous direction of travel, to launch decedent's vehicle airborne gyrating like a top, and to send decedent's vehicle crashing through the brick and block wall of the Trio Lounge where it came to rest. None of this evidence was controverted.

There was substantial evidence presented as to the speed Officer Hughes' squad car was traveling as it entered the intersection. Although the testimony was controverted, the officer testified that he was traveling at 20 miles per hour, and two eyewitnesses established the speed as "20 to 25" and "maybe 20 miles per hour," respectively. In addition, prior to the accident, the City of Springfield had equipped its squad car with a speed measuring device known as a tachograph in an effort to maintain a check on police officers with regard to their speed, downtime, *etc*. Three experts read the printed record registered by the tachograph device and established the squad car's speed at the time of impact at "55," "between 50 and 55," and "22 miles per hour," respectively. Whichever estimate of the squad car's speed was correct, it was uncontradicted that Officer Hughes drove into the intersection with his vision substantially hindered, was unable to stop his vehicle when his direction of travel was impeded, and struck the Mayfield auto with the results as previously recited. To have entered such a crowded intersection at any speed without the vehicle being in sufficient control to permit an abrupt stop, particularly with so many obstacles present preventing a clear view of the dangers which might lie ahead, belies all representations of caution and is certainly inconsistent with safe operation.

Officer Hughes first saw the intersection without the obstructions to vision represented by standing vehicles or the school gymnasium when he turned his squad car into the left turn lane. Assuming a speed of just 20

miles per hour, it would have required the squad car only 3.07 seconds to traverse the 90-foot length of the left turn lane, only 3.07 seconds to react to the presence of the Mayfield vehicle and come to a stop. Under no circumstances can it be construed as safe operation to place just 3.07 seconds between security and calamity.

■■ ■ Even if a speed of 20 miles per hour could, under these circumstances, be said to exhibit a due regard for the safety of all persons, we hold that no jury could be permitted to conclude that the City's squad car was traveling at such speed. The trier of fact must, as a matter of law, reject testimony which is physically impossible, or so inherently improbable as to be contrary to the common experience of mankind. (*Old Second National Bank v. Gould* (1979), 75 Ill. App. 3d 839, 393 N.E.2d 1356.) To suggest that the squad car could have impacted the Mayfield vehicle at 20 miles per hour with the force necessary to bring about the chain of events which followed defies comprehension. Thus, we conclude that viewing all the evidence in its aspect most favorable to the defendant City, the only conclusion to be drawn is that Officer Hughes negligently drove his squad car into the intersection of Eleventh and North Grand on July 2, 1978.

We further conclude that the decedent's conduct in the operation of her auto was blameless. The evidence was unimpeached that decedent had stopped or slowed to almost a stop while waiting to make a left turn onto North Grand. While the law required drivers to yield to emergency vehicles by driving "to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway" (Ill. Rev. Stat. 1977, ch. 95½, par. 11—907), for the decedent to have so proceeded under these circumstances would have caused her to be further in jeopardy. Stopped or almost stopped as she was, her position was at least in part protected from the approach of the westbound emergency vehicle by the standing traffic on North Grand. Her conduct represented a prudent attempt to yield passage through the intersection to the rapidly approaching emergency vehicle. Ms. Mayfield entered the intersection with a green light authorizing her to proceed, and the same obstructions which blocked Officer Hughes' view of her approach obscured her view of his flashing lights. With this evidence, the only conclusion which can be drawn overwhelmingly condones the reasonableness of the decedent's conduct.

For the reasons we have set forth, we hold that the trial court should have granted the post-trial request of both plaintiffs for judgment *non obstante veredicto*. Inasmuch as the damages incurred by plaintiff Napier were stipulated to be $14,803, we enter judgment in said amount for that plaintiff pursuant to Supreme Court Rule 366 (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)). With regard to the plaintiff Mayfield, we enter a judgment finding the defendant negligent, finding that negligence the

proximate cause of decedent's death, and finding plaintiff's decedent free from contributory negligence. Since the damages sought by plaintiff were contested, we remand the cause for a hearing on the issue of damages only. Finally, motions by plaintiffs to strike portions of defendant's briefs on appeal are hereby denied.

Reversed and remanded.

ALLOY, J., concurs.

HEIPLE, J., dissents.