WENDY BOUHL, Plaintiff-Appellant, v. STEVEN S. SMITH *et al.*, Defendants-Appellees.

Third District   No. 3—84—0012

Opinion filed February 26, 1985.

William K. Brown, of Goldfine & Bowles, of Peoria, for appellant.

Rex K. Linder and Robert E. Nesemann, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Wendy Bouhl, sued Officer Steven Smith of the Peoria County sheriff's office and the county of Peoria for personal injuries suffered by her as a result of an accident in which the truck she was driving was rear-ended by the defendant's squad car. A Peoria County jury returned a verdict for the defendants on the question of negligence. Plaintiff filed a post-trial motion for judgment notwithstanding

the verdict, which was denied. She appeals.

On February 14, 1975, around 4:30 p.m., defendant Smith, while on patrol duty, received a dispatch to go to an accident scene located at Route 88 and Woodside Drive in Peoria County. At the time, Smith was on Mossville Road, a two-lane road, near Route 29. Smith testified that he activated the lights and siren on his squad car and drove about 40 miles per hour in the 45-mile-per-hour zone. He was still in the westbound lane of Mossville Road as he approached the point where Mossville Road meets Route 88, a stop for Mossville traffic. There he observed several vehicles lined up in his lane of traffic, and he slowed to around 35 miles per hour to attempt to go around that backed-up, stopped traffic by passing in the eastbound lane. The record is unclear as to the exact number of cars that were in the westbound lane between the plaintiff's truck, which was the rear-most vehicle at the end of the line, and the stop sign at the intersection—the plaintiff being of the opinion that at least two cars were ahead of her and the officer opining that maybe eight or a dozen vehicles were in the line as he attempted to pass. At that point Smith saw a vehicle turn from Route 88 into the Mossville Road eastbound lane, heading towards him. Smith swerved his squad car back towards the westbound lane, braked, and skidded into the rear end of plaintiff's truck. Smith estimated that his speed just prior to impact was 30 miles per hour. The point of collision was 220 feet from the stop sign at the "T" intersection.

The weather conditions were described as starting to sleet or snow. The pavement was wet and slippery. The shoulders on both sides of Mossville Road were too narrow to permit vehicles to travel on them. The posted speed limit on Mossville Road was 45 miles per hour. It further appears that Smith was familiar with the vicinity of the accident and knew the intersection of Route 88 and Mossville Road to be busy at that time of day.

The plaintiff testified that she had been stopped at the end of the line of traffic for 20 to 30 seconds and had neither seen nor heard the defendant's squad car approaching from the rear prior to the impact. The damage to the truck was minor; and the damage to the front of the squad car, substantial. The plaintiff suffered head and back injuries which were the subject of much dispute at trial but need not be described in detail for purposes of this appeal.

The only issue which need be addressed in this appeal is whether the trial court should have granted plaintiff's motion for a directed verdict on the issue of liability at the close of all evidence and whether the court erred in denying plaintiff's post-trial motion for

judgment notwithstanding the jury's verdict for the defendant. Our task is to determine whether all of the evidence viewed in its aspect most favorable to the defendants so overwhelmingly favors the plaintiff that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) For the reasons that follow, we reverse.

The defendant's theory of nonliability as presented at trial and again on appeal is premised on an application of sections 11—205 and 11—907 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 11—205 and 11—907). These provisions grant exemptions from certain traffic laws to operators of "authorized emergency vehicles when responding to an emergency call" and when "making use of either an audible signal *** or visual signals" (Ill. Rev. Stat. 1983, ch. 95½, par. 11—205), and require that other drivers yield to such an approaching emergency vehicle and "immediately drive to a position parallel to, and as close as possible to, the right hand edge *** of the highway" so as to permit passage of the emergency vehicle (Ill. Rev. Stat. 1983, ch. 95½, par. 11—907). By operation of these statutes under the circumstances of this case, defendants contend, Officer Smith was not negligent in attempting to pass in the left-hand lane and, in any event, the appearance of an on-coming vehicle which failed to make way for Smith was the proximate cause of the accident.

Plaintiff does not dispute that defendant Smith qualified for the statutory exemption for emergency vehicles (Ill. Rev. Stat. 1983, ch. 95½, par. 11—205) under the circumstances as they existed on the date of the accident, but disagrees with the defendant's application of the statutory provisions. According to the plaintiff, the statutes at issue authorize drivers of emergency vehicles to violate rules of the road only to the extent that such violations do not endanger other persons. Under plaintiff's view, the statutory exemptions do not lower the standard of care chargeable to operators of emergency vehicles when an accident results. The question of negligence is measured by what a reasonable, prudent emergency vehicle driver would do under all of the circumstances, including that of the emergency. (*Torres v. City of Los Angeles* (1962), 58 Cal. 2d 35, 372 P.2d 906, 22 Cal. Rptr. 866; *Rutherford v. State* (Alaska 1979), 605 P.2d 16.) The plaintiff argues that defendant Smith was negligent in that his speed was too fast for existing conditions and that he failed to keep a proper lookout for vehicles that might enter the eastbound lane on the busy narrow road before proceeding into it and attempting to pass a continuous line of cars stretching 200-odd feet back from State Highway 88, a "T" intersection.

The specific subsections of the statutes relied upon by the plaintiff are as follows:

"The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for safety of others." Ill. Rev. Stat. 1983, ch. 95½, par. 11–205(e).

"This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." (Ill. Rev. Stat. 1983, ch. 95½, par. 11–907(b).)

We find the plaintiff's position compelling. It is obvious that the plaintiff could not have done anything to avoid the accident.

■ On the basis of the foregoing statutory provisions, plaintiff correctly observes that the ordinary-negligence standard applies to operators of emergency vehicles. Under ordinary-negligence standards, adverse weather and road conditions known to the negligent party are not sufficient to absolve a defendant from liability for an accident where the defendant's car skids into the plaintiff's and the plaintiff's car is entirely within its own lane of traffic. (*Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 227 N.E.2d 758; *Kyrouac v. Brockman* (1983), 120 Ill. App. 3d 249, 457 N.E.2d 1074.) In *Sughero v. Jewel Tea Co.* (1967), 37 Ill. 2d 240, 226 N.E.2d 28, on similar facts, our supreme court approved the principle that "after plaintiff [has] shown defendant's vehicle was on the wrong side of the highway and out of control, [defendant] had the duty of showing it was there for some reason other than his own negligence." 37 Ill. 2d 240, 242, 220 N.E.2d 28, 29.

In the instant case, the defendants point to the appearance of the unknown vehicle that turned onto Mossville Road after Smith entered the left-hand lane of traffic to explain that Smith's decision to re-enter the right-hand lane was reasonable. Defendants posit that the potential danger of a head-on collision would inspire a reasonably prudent person under the circumstances to risk rear-ending the plaintiff's stopped vehicle.

The problem with defendants' theory is that it fails to acknowledge that it was entirely foreseeable that a vehicle would enter the left hand of Mossville Road from Route 88 at the "T" intersection during Smith's proposed travel of an excess of 200 feet on the wrong side of the road, regardless of his speed. Smith, as aforesaid, was familiar with the area and its heavy traffic at that time of day. The testimony at trial did not indicate that Mossville Road was other than

straight or that there was any obstruction that would have concealed the unknown vehicle from Smith's view before he left the right-hand lane. It was not established that the unknown vehicle was traveling at an excessive rate of speed before it reached the "T" intersection. It was not established how far that vehicle had traveled along Mossville Road before Smith braked and went into the skid. Finally, it was not established that the unknown vehicle did not slow down when Smith's emergency vehicle appeared to be heading directly in its path. The testimony at trial simply established that the oncoming vehicle was not involved in the accident. When asked whether that vehicle ever stopped, Smith stated, "I don't believe so." Since Smith had not yet passed the plaintiff's truck which was last in line, it seems that the unknown vehicle appeared at the intersection almost immediately after Smith left the right-hand lane and that Smith's switch back into that lane was attempted immediately upon his viewing the oncoming vehicle. The split-second timing of the events would explain Smith's inability at trial to state positively what action was taken by the unknown vehicle. In any event, it is undisputed that Smith's car went out of control when he attempted to correct his lane of travel, braked and collided with the rear of the truck occupied by Bouhl.

■ We hold that under the circumstances here presented, the defendant has failed to carry his burden of proving that his vehicle was under sufficient control to proceed in the left-hand lane with due regard for the safety of others. Neither the presence of the unknown motorist, nor the existing weather and road conditions, nor the emergency to which Smith was responding provides an adequate explanation or excuse for the defendant's failure to maintain control of his squad car so as to avoid colliding with the plaintiff's truck. Where, as here, it is clearly established that the plaintiff performed no act or omission which could in any way be considered negligent, and the perilous situation which led to the accident was a creation of the defendant emergency vehicle operator's own negligence, then the defendant must be found negligent. The act or omission of the driver of the unknown vehicle could not have been a superseding cause of plaintiff's injuries, since it was not established that his appearance at the "T" intersection was in any respect an unforeseeable circumstance. From the facts and evidence here presented, and viewing the evidence in the light most favorable to the defendants, we conclude that reasonable minds could not differ in their judgment and could only determine that Officer Smith was negligent and that his negligence was a proximate cause of injuries to the plaintiff.

The court should have granted plaintiff's motion for a directed

verdict on the question of Smith's negligence and instructed the jury that Smith was negligent as a matter of law. Having failed to do so, the court should have granted plaintiff's motion for judgment notwithstanding the verdict.

Accordingly, we reverse and remand this cause to the circuit court of Peoria County with directions to enter judgment for plaintiff on the issue of liability and to grant a new trial on the issue of damages only.

Reversed and remanded.

SCOTT, J., concurs.

JUSTICE STOUDER, specially concurring:

I agree with the result reached by my colleagues, but I doubt the applicability of some of the reasoning employed to support the result.

In particular I do not believe that the "wrong side of the road rule" as discussed and applied in *Sughero v. Jewel Tea Co.* (1967), 37 Ill. 2d 240, 226 N.E.2d 28, can be applied to a rear-end collision. The *Sughero* case applies the rule as it is generally applied where one vehicle crosses into the lane legitimately occupied by a vehicle traveling in the opposite direction. This rule has not been applied, so far as I am aware, to a case such as this, where the collision occurred between vehicles traveling in the same direction in the lane properly used by vehicles traveling in that direction.

However, I am content to agree with the holding that the defendant was negligent as a matter of law, but I believe such a conclusion is appropriate without resort to any burden of proof on his part arising from the application of the "wrong side of the road rule."