(No. 89-CC-0351, 89-CC-0352 cons.—)

JOSEPH DAVIS and JEFFREY MCCORMICK, Claimants, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 24, 1992.*
*Opinion filed September 24, 1996.*

KOGUT & BEUKE (JOHN M. KOGUT and EDWARD F. COZZI, of counsel), for Claimants.

ROLAND W. BURRIS and JIM RYAN, Attorneys General (THOMAS L. CIECKO and JANICE SCHAFFRICK, Assistant Attorneys General, of counsel), for Respondent.

94

## OPINION

RAUCCI, J.

This matter comes before us on the Respondent's motion to dismiss for failure of the Claimant to exhaust his remedies by not bringing a civil action against the driver of the vehicle, in which Claimant was a passenger at the time Davis collided into a concrete wall as a result of taking evasive action to prevent collision with a State police car at an intersection.

We have considered the briefs and oral arguments of the parties and proceed to decide the issue presented to us.

Respondent's position is best summarized by the following statement from its reply brief:

"The essence of the (exhaustion of remedies) requirement is that it is incumbent on the claimant to have the issue of the driver's negligence adjudicated in a civil action before seeking final determination of this claim in this Court."

In support of this proposition, Respondent relies on our decisions in *Patton v. State* (1988), 41 Ill. Ct. Cl. 77 and *Boe v. State* (1984), 37 Ill. Ct. Cl. 72 and their progeny.

A cursory reading of those cases demonstrates that Respondent misapprehends their teaching.

In *Boe*, the driver of the car in which Claimant was a passenger skidded on the road before hitting an allegedly defective post. In *Patton*, the Claimant's driver rear ended a State truck and the State obtained a civil judgment against the driver.

Both section 25 of the Court of Claims Act (705 ILCS 505/25) and section 790.60 of the Court of Claims Regulations (74 Ill. Adm. Code 790.60) require any person who files a claim to exhaust all other remedies and sources of recovery, whether administrative, legal or equitable. This case presents the question of whether the exhaustion requirement is tantamount to a statutory command that a Claimant must sue a third party against whom Claimant has no reasonable belief that a remedy exists. We hold that a Claimant is not so required.

Not only does the plain reading of the statute indicate a lack of legislative intent to require pursuit of non-existent remedies, but, as pointed out by Claimant, the General Assembly has indicated a contrary intent at the time Claimant filed his complaint.

At that time, the Code of Civil Procedure provided in section 2—611.1 (Ill. Rev. Stat. 1989, ch. 110, par. 2—611.1) as follows:

"Untrue statements * * * allegations and denials, made without reasonable cause, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

We do not believe that the General Assembly intended to require Claimants to file frivolous or unfounded actions. The Respondent alleges no facts to demonstrate that a remedy exists to be pursued.

Our responsibility particularly as part of the legislative branch of government, is to follow the intent of the General Assembly.

It is therefore ordered that the Respondent's motion to dismiss is denied.

## OPINION

Raucci, J.

The claims by Claimants Joseph Davis and Jeffrey McCormick were consolidated for purposes of a hearing. Both claims arise out of the same motor vehicle accident with a State police vehicle and allege that State Trooper Cheryl Banes was negligent in the operation of her vehicle.

Claimant Joseph Davis testified that on November 5, 1987, at approximately 11:30 p.m., he was traveling northbound on an off-ramp of Illinois Route 53 (hereinafter referred to as Ill-53) in Cook County, Illinois. He was driving an automobile and Jeffrey McCormick was a passenger seated next to him. He was approaching the intersection with Illinois Route 72 (hereinafter referred to as Ill-72). There are traffic control lights at the intersection of Ill-53 and Ill-72. The off-ramp of Ill-53 had four

lanes. The two left lanes were turn lanes and the two right lanes were straight ahead lanes. Claimant was in the far right lane with no vehicles in front of him. The traffic light for his lane was green. Prior to entering the intersection, he did not observe any emergency vehicles or emergency or flashing lights, or hear any sirens or horns. Upon entering the intersection, he did not observe any emergency vehicles, or emergency or flashing lights, or hear any sirens or horns. After entering the intersection, he saw a vehicle to his left. He was in the middle of the intersection when he saw the vehicle. It was approximately ten to 15 feet from his automobile. He believes it was traveling approximately 40 miles per hour.

On the west side of the off-ramp, Ill-53 crosses over Ill-72. Ill-72 runs east and west. Where Ill-53 crosses over Ill-72 it is an overpass. There is a big grassy hill obstructing ground level views because Ill-53 is built up.

When Claimant saw the headlights of the vehicle, he did not hear any sirens. He cut the wheel to the right and accelerated. He avoided colliding with the vehicle. He struck the median separating eastbound and westbound Ill-72. There is an island median where a traffic light is mounted on the curb. He struck the curb and the car went airborne, coming down on the north side of Ill-72 and struck another median located for a turn lane off of westbound Ill-72 to enter northbound on Ill-53. His automobile came to rest 20 to 30 yards further away.

After his automobile came to rest, Jeffrey McCormick fell out. There was fire underneath his car. He dragged Claimant McCormick away from the car. He learned the driver of the vehicle he nearly collided with was an Illinois State trooper.

Claimants Davis and McCormick were transported by ambulance to Alexian Brothers Hospital. A doctor saw

Davis and he was released. A few days later he went to a doctor at the Dempster Clinic. He had back pains, neck pains, headaches and a sore ankle. The treatment he received relieved some of the pain. He still experiences neck pain and has headaches two days a week. He takes aspirin. He has not seen any doctors in relation to his back or neck injury since three months after the accident. He did see Dr. John Diveris in regard to his ankle.

He had strained tendons and ligaments. He wore an air cast for three weeks. He had stiffness for three or four years. He missed one week of work from Dominick's Finer Food Stores and lost $300 in wages. His vehicle was worth approximately $3,000 and was a total loss.

On cross-examination, Claimant Davis acknowledged that his radio was on at the time of the accident. He was talking to Claimant McCormick at the time of the accident. Claimant's testimony on direct examination of lost wages was impeached when counsel showed that Claimant stated in his deposition that he did not lose any days off work or any wages. Claimant also stated in his deposition that he experienced headaches once a week.

Claimant Jeffrey McCormick testified that he was a passenger in an automobile driven by Joseph Davis on November 5, 1987. He described the four lanes differently than did Joseph Davis. He also testified that they were in the third lane from the left, contrary to Claimant Davis' statement that they were in the fourth lane from the left. Eastbound traffic on Ill-72 comes from under the viaduct. The road is built up forming a hill that obstructs vision. He saw that the light was green as they approached the intersection of Ill-53 and Ill-72. He did not observe any emergency vehicles, or emergency lights or flashing lights, or hear any sirens or horns, either prior to, or upon, entering the intersection. When they were halfway through the

intersection, he saw headlights to his left. Claimant Davis turned very hard to the right and accelerated. He estimated that the vehicle was traveling between 40 and 50 miles per hour. They hit the median and the car went up on two wheels, and hit another median across the street. He does not believe he fell out of the car. He opened the door after the car came to a rest and was lying next to the car. His neck and shoulder struck the car's interior.

He was taken by ambulance to Alexian Brothers Hospital. He was examined and released. He saw Dr. Anderson at the Dempster Clinic and Dr. Bikshorn at Northwest Neurological. He later received an electromyogram from another doctor. He received physical therapy for several weeks. He was experiencing tingling feelings shooting down his arm into three fingers in his right hand. He received an examination at Humana Hospital at the direction of Dr. Bikshorn. He returned in February 1988, to Dr. Anderson because of the tingling feeling in his fingers. He still experiences tingling feelings and dull pain in his fingers approximately three days a week and has lost strength in his right hand. His neck is stiff most of the time.

Claimant McCormick stated that he lost about five weeks of work, and approximately $2,550, as an automobile painter at Trailwood Auto Body in Wheeling because of the accident.

On cross-examination, Claimant McCormick acknowledged that at his deposition he stated that he lost two weeks, and approximately $1,500, from work. Claimant does not know whether the $818 bill from Dr. Anderson at Dempster clinic had been paid. He believed all others were paid. He is not seeing any doctors and does not plan to see any doctors. He is not on any medication. Claimant has skated since the accident. He played hockey prior to the accident, but not afterwards.

Trooper Cheryl Banes testified that at the time of the incident she was a trooper with the Illinois State Police. At approximately 11:30 p.m. on November 5, 1987, she was eastbound on Ill-72 approaching the intersection with Ill-53. The overpass of Ill-53 obscures some vision of the intersection with the off-ramp of Ill-53. She was on an emergency call the night of the accident. The call she received was of an accident involving a car and a deer with a report of personal injuries. She was traveling on Ill-53 when she received the call and she exited Ill-53 onto Ill-72. She activated her lights and siren as soon as she got the call, but she does not remember her rate of speed. She believes she was proceeding south on the Ill-53 off-ramp and was traveling at approximately 20 to 25 miles per hour and slowed to make the turn onto Ill-72. She turned left heading east on Ill-72. The intersection of the Ill-53 northbound off-ramp and Ill-72 is not under the overpass of Ill-53. She was traveling at approximately 20 to 25 miles per hour as she approached the intersection.

Trooper Banes first saw Claimants' vehicle when it was in front of her. Trooper Banes believes the intersection is approximately 100 feet in width. She did not see any vehicles moving. She was driving a semi-marked car with grille lights and emblem markings on the door and trunk. She looked to the right and did not see Claimants' vehicle enter the intersection, but it would have had a green light. When she saw the vehicle in front of her she hit the brakes. She did not hear the tires squeal and did not leave skid marks.

Trooper Banes received training for driving in emergency situations while she was at the State Police Academy. Prior to the accident, she had driven a vehicle in response to an emergency call at least 100 times. On the night of the incident, she was driving a semi-marked vehicle with emblems on the door, two rear deck lights on the

inside of the vehicle, two emergency lights, one red and one blue in the front of the grille and the headlights were wigwags. Wigwags alternate high and low beams. The siren comes from the front of the grille. She received a call of an accident involving a car and a deer and there were injuries sustained by the driver and/or passengers. She responded as an emergency call because personal injuries were involved. She activated the wigwag headlights, the emergency lights in the grille and rear deck, and the siren while she was on Ill-53. When she turned left from the off-ramp of Ill-53 and approached the overpass she turned on her intermittent siren. She remembers that her light had been green and it just turned red. When she proceeded through the intersection all she saw was the vehicles that were stopped. The next thing she saw was Claimants' car in front of her. She hit her brakes and observed the car had hit the raised median. She proceeded to where she could turn around and come back, which she did. She was not reprimanded, suspended or discharged by the Illinois State Police because of the incident.

On cross-examination, Trooper Banes acknowledged that she does not know whether or not there was a personal injury to a driver or occupant of the car accident she was en route to investigate.

Sergeant Mark Omura testified that he was a field supervisor/sergeant on the date of the accident and that he investigated the accident on November 5, 1987. He interviewed Trooper Banes at the scene of the accident. Trooper Banes related her description of what occurred to him. She also told him there were some stopped vehicles on the northbound lanes. According to Banes, the northbound traffic control signal had changed to green but vehicles had stopped at the intersection. He interviewed both Claimants. In his interview with Mr. McCormick,

Sergeant Omura learned that he did not see the emergency lights and was not wearing a seat belt.

Sergeant Omura interviewed witnesses at the scene and learned that Claimants' vehicle pulled around vehicles that had stopped for the emergency vehicle, that was traveling eastbound, and entered the intersection. His determination was that this accident was non-preventable and that Trooper Banes was not at fault. The accident review board determined that the accident was non-preventable.

On cross-examination, he stated that he determined Claimants' car pulled around vehicles and entered the intersection based upon statements by two witnesses, Mr. Murbach and Mr. Carter. Trooper Banes did enter the intersection against a red light. In Murbach's statement, there is no mention of Claimants' car pulling around Murbach's car. Sergeant Omura never confirmed whether there was an accident involving personal injuries to which Trooper Banes was proceeding. Part of his report erroneously indicated that Mr. McCormick was the driver. Although he issued a citation to Mr. McCormick for not wearing a seat belt, he does not recall where he interviewed him.

Claimants argue that Trooper Banes violated the standard of ordinary care when she drove her semi-marked patrol car into a crowded intersection while her vision was obscured and at a speed which was excessive under the circumstances. The Respondent's supposition of non-liability is predicated upon sections 11—205 and 11—907 of the Motor Vehicle Code, hereinafter referred to as the Code. 625 ILCS 5/11—205(b), (c)2, and 5/11—907(a).

As to emergency vehicles, section 11—205 of the Motor Vehicle Code provides:

"§11—205. Public officers and employees to obey Act—Exceptions.

(a) The provisions of this Chapter applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated

by the United States, this State or any county, city, town, district or any other political subdivision of the State, except as provided in this Section and subject to such specific exceptions as set forth in this Chapter with reference to authorized emergency vehicles.

(b) The driver of an authorized emergency vehicle, *when responding to an emergency call* or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated. [Emphasis added.]

(c) The driver of an authorized emergency vehicle may:

\* \* \*

2. *Proceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation;* \* \* \*." [Emphasis added.]

## As to Claimants, section 11—907 of the Motor Vehicle Code provides:

"§11—907. Operation of vehicles and streetcars on approach of authorized emergency vehicles.

(a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of this Code or a police vehicle properly and lawfully making use of an audible or visual signal,

(1) the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall, if necessary to permit the safe passage of the emergency vehicle, stop and remain in such position until the authorized emergency vehicle has passed, unless otherwise directed by a police officer \* \* \*."

## Crucial to a just and equitable resolution of the matters before the court are sections 11—205(e) and 11—907(b) of the Motor Vehicle Code which state:

"§11—205. Public officers and employees to obey Act—Exceptions.

(e) The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

and

"§11—907. Operations of vehicles and streetcars on approach of authorized emergency vehicles.

(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

The driver of an emergency vehicle must exercise the standard of ordinary care in an emergency situation. In *Bouhl v. Smith*, 130 Ill. App. 3d 1067, 475 N.E.2d 244, the Court considered sections 11—205 and 11—907 of the Motor Vehicle Code. The parties were involved in a motor vehicle accident. The citizen driver, Bouhl, was operating a vehicle on a two-lane road nearing a "T" intersection. She had come to a stop behind other stopped vehicles. Officer Smith at that time was to the rear of and proceeding in the same direction as Ms. Bouhl. Officer Smith stated he was traveling below the posted speed limit, seeing the line of vehicles stopped, he pulled into the oncoming lane of traffic to pass. At that time a vehicle turned onto the road at the intersection thus creating a head-on situation between the vehicle which had just turned and Officer Smith's car. Smith then swerved his squad back into what would be the correct lane for his direction of travel, applied his brakes and slid into the rear of Bouhl's vehicle. The jury found for the defendant. The *Bouhl* Court, applying the standard set forth in *Pedrick v. Peoria & Eastern Railroad Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, reversed the trial court's denial of plaintiff Bouhl's motion for judgment notwithstanding the verdict and remanded the cause to the trial court with directions to enter a judgment for the plaintiff on the issue of liability. *Bouhl*, 435 N.E.2d at 245.

In *Mayfield v. City of Springfield* (1982), 103 Ill. App. 3d 1114, 432 N.E.2d 617, the court was presented with a factual situation similar, but distinguishable, to that of the Claimants in this matter. The facts in *Mayfield* disclose that an emergency vehicle in the act of answering a call collided with a citizen driver resulting in the death of the citizen and damage to nearby property. Ms. Mayfield

was enroute to a church function approaching an intersection where she was intending to make a left turn. She proceeded into the intersection as she had a green light. Officer Hughes at this time was proceeding west on the road which Ms. Mayfield was intending to turn onto. He deemed this call to be urgent. He activated his siren and flashing lights and drove toward the intersection where decedent was waiting to turn. The traffic light governing the right-of-way for traffic proceeding in the direction the officer was traveling was red. As he neared the intersection, he used the left turn lane to pass a number of cars that were stopped. He then proceeded into the intersection where he collided with decedent's vehicle.

The officer's view of the intersection was obstructed or impaired by a school gymnasium, stopped vehicles, the setting sun and shadows cast by a building on a corner of the intersection. The jury concluded the defendant police officer was not negligent and as such denied recovery to plaintiffs. As in *Bouhl, supra*, the *Mayfield* court reversed the trial court, held the jury's verdict for naught and entered judgment for the plaintiffs, finding the defendant was negligent as a matter of law and remanded the decedent's case for a determination of damages.

The Appellate Court, in *Mayfield*, stated:

"'The driver of an authorized emergency vehicle may * * * [p]roceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation.' (Ill. Rev. Stat. 1979, ch. 95½, par. 11—205(c)(2).) This suspension of the rules of the road is available only 'when responding to an emergency call' (Ill. Rev. Stat. 1979, ch. 95½, par. 11—205(b)) and only when 'due regard for the safety of all persons' is exhibited. (Ill. Rev. Stat. 1979, ch. 95½, par. 11—205(e)). This special rule governing drivers of emergency vehicles permits them to cautiously circumvent strict application of the traffic laws in the interest of hastening their mission, thus promoting the public safety and welfare. It does not permit them carte blanche authority to charge into heavily traveled urban intersections in defiance of all reason as if bearing the colors for General Pickett. To so construe the authority of section 11—205 would undermine the very purposes of public safety and welfare that the statute was intended to serve." *Mayfield, supra*, 619, 620.

To prevail Claimants must prove, by a preponderance of the evidence, the negligence of Trooper Banes was the proximate cause of injury to them and that damages naturally flowed from the injury. *Stanley v. State* (1986), 39 Ill. Ct. Cl. 107, 110.

*Mayfield, supra,* did not discuss the standard of care. It held, as a matter of law, that the officer was negligent in that he failed to exercise "due regard" for the circumstances.

*Bouhl, supra,* does not clearly set forth the basis of the Court's holding.

At 130 Ill. App. 3d 1067, at 1069, the Appellate Court stated:

"* * * The question of negligence is measured by what a reasonable, prudent. emergency vehicle driver would do under all of the circumstances, including that of the emergency. [Citations omitted] * * *."

The Appellate Court then went on to address "ordinary negligence standards" and concluded that:

"We hold that under the circumstances here presented, the defendant has failed to carry his burden of proving that his vehicle was under sufficient control to proceed in the left-hand lane with due regard for the safety of others. Neither the presence of the unknown motorist, nor the existing weather and road conditions, nor the emergency to which Smith was responding provides an adequate explanation or excuse for the defendant's failure to maintain control of his squad car so as to avoid colliding with the plaintiff's truck. Where, as here, it is clearly established that the plaintiff performed no act or omission which could in any way be considered negligent, and the perilous situation which led to the accident was a creation of the defendant emergency vehicle operator's own negligence, then the defendant must be found negligent."

As to the negligence of Trooper Banes, this court has held that the conduct of a driver of an emergency vehicle is measured against a specific statutory standard contained in the Illinois Vehicle Code. *Bauman v. State* (1981), 34 Ill. Ct. Cl. 140, 143-145.

A police vehicle is an authorized emergency vehicle. (625 ILCS 5/1—105.) The court has held that a police

officer in responding to an emergency call must use a siren when necessary to warn pedestrians and other drivers of her approach and drive with due regard for the safety of others. *Bauman, supra,* at 145.

Not only was Trooper Banes using her siren and lights, but was using them in a fashion to warn other drivers on the road. While we accept the Claimants' testimony that they did not hear the siren or see the flashing lights, her uncontradicted testimony is that she activated her siren and lights well before arriving at the intersection. Other drivers at the scene traveling the same direction as Claimants had all stopped even though that traffic had a green light.

Claimants argue that they did not hear a siren or see any flashing lights. But they admit being in a closed vehicle, talking to each other with the radio on. Clearly, Davis, the driver, came to the intersection, saw the green light and drove through. They were distracted, in conversation and with the radio as background. That can hardly have been the fault of Trooper Banes.

There is further the finding by Sergeant Omura that Davis drove around stopped vehicles and entered the intersection. This is supported by the contradictory testimony of Davis and McCormick as to which lane they were in when they approached the intersection.

Claimant sites *Mayfield v. City of Springfield* (1982), 103 Ill. App. 3d 1114, as an identical case and grandly pronounces Trooper Banes negligent as a matter of law. A closer look at *Mayfield* finds the facts far removed from those in the instant case.

In *Mayfield,* the Illinois Appellate Court reversed the denial of a motion for judgment notwithstanding the verdict. A Springfield city police officer, while proceeding

through an intersection, struck and killed a driver on her way to church. The Appellate Court found the officer was negligent. It cited the following facts: the officer's view of the intersection was blocked by a gymnasium; his observation of the intersection was obstructed by vehicles stopped in the other lane of traffic; his vision was impaired by the setting sun glaring in his eyes; his perceptions were diminished by long shadows cast by a multistory building at the corner; and that it was physically impossible to have been driving 20 miles per hour.

The obvious difference between *Mayfield* and this case is that there is no evidence that Banes' view of the intersection was in any way blocked, obstructed or impaired in any way. Claimant cites the transcript and states "also it was agreed the Claimants' view of the intersection was obstructed by the overpass, the grassy knoll and other vehicles stopped at the intersection." The record reveals no such "agreement."

Respondent cites, *Nolan v. Elliot* (1989), 179 Ill. App. 3d 1077, 1083, as being similar because Banes slowed to 25 miles per hour at the intersection.

Claimants' claim should be denied because of their failure to prove negligence on the part of Trooper Banes and because of the speculative nature of their claim for damages.

We find that Claimants did not carry their burden of proof to establish that Trooper Banes negligently entered the intersection and that Respondent is not liable for Claimants' injuries. Trooper Banes testified that her lights and siren were utilized. No evidence was offered to refute this fact. Claimants only contend that they did not see her vehicle or lights and did not hear the siren. Claimants admitted their radio was operating. The evidence indicates that Claimants' vehicle entered the intersection, even though

Mr. Carter and Mr. Murbach indicated that other vehicles noticed the emergency vehicle and stopped prior to the intersection. Claimants fail to agree on which lane their vehicle was in. Claimant Davis stated that they were in the fourth lane from the left and Claimant McCormick said they were in the third lane from the left. Claimants both admit that their vision was obscured.

The evidence does not establish that Trooper Banes acted in a manner contrary to the standard of care.

It is therefore ordered, adjudged and decreed that this claim be, and it is hereby, dismissed with prejudice and forever barred.